## Commonwealth *v.* Alston, Appellant.

Submitted November 16, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDER-INO, JJ.

*Harry Jackson,* for appellant.

*Benjamin H. Levintow,* and *Milton M. Stein,* Assistant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE NIX, March 25, 1974:

Appellant, Nathan Alston, was indicted and charged for the murder of one, Byron Harden. After trial before a jury a verdict of murder of the second degree was entered. Motions for a new trial and in arrest of judgment were filed, argued and subsequently denied. A sentence of imprisonment of not less than five nor

more than twenty years was imposed. This is direct appeal from the judgment of sentence.[1]

The sole issue before this Court revolves around the suppression court's denial of appellant's motion to suppress his oral and signed written statements given to investigating officers. Appellant now raises two challenges to the statements' admissibility. First, that they were involuntary under the totality of the circumstances. Second, that the standard *Miranda* warnings are inadequate, in that appellant should have been warned if he elected to remain silent the police would not be permitted to question him further.[2]

---

[1] The appellant was also indicted under a three-count indictment charging assault and battery, aggravated assault and battery and assault and battery with the intent to kill, the victim being one, Jesse Kirkland. Under this indictment, which was tried along with the murder indictment, the jury returned a verdict of guilty to the assault and battery and a sentence of from three to seven years was imposed. This conviction has been improperly appealed directly to this Court. Act of July 31, 1970, P.L. 673, No. 223, Art. III, §302, 17 P.S. §211.302. In the opinion filed by the trial judge pursuant to Supreme Court Rule 56 the following statement appears.

"When the defendant was brought before this Court for sentencing three months after his trial commenced, the Court was incorrectly advised that the defendant has been found guilty of all three counts of Bill No. 1073 (N.T. 279). The Court recognizes its inadvertence, since the crime of simple assault and battery is punishable by a term of imprisonment of not more than two years, and therefore advises the Supreme Court that upon return of the record to the Court below, it will undertake to modify the sentence in accordance with the law and with the Supreme Court's direction."

In view of this statement by the court below and the obvious error of sentence, we will not transfer the matter to the Superior Court where jurisdiction properly lies, but rather vacate the sentence imposed under this bill of indictment and remand to the lower court for resentencing.

[2] The question of a possible violation of Pennsylvania Criminal Procedure Rule 118 was not raised either before the suppression court or before this Court.

Counsel for appellant at the suppression hearing proceeded on the legal theory that the Commonwealth is required to tell a suspect or an accused if he wishes to remain silent that all questioning will immediately cease. The suppression court ruled as a matter of law to the contrary. Although not contended by the appellant below, the hearing court gratuitously found that the appellant's will was *overborne* by the continuous questioning. Notwithstanding this finding and without explaining the hearing court denied the motion to suppress. We now affirm the suppression court's order denying the motion to suppress but reject the finding that appellant's will had been overborne.

It is fundamental that a court having found the will of the accused to have been overborne must suppress any admission or confession that results from the interrogation. See, *Culombe v. Connecticut,* 367 U.S. 568 (1961); *Commonwealth ex rel. Butler v. Rundle,* 429 Pa. 141, 239 A.2d 426 (1968); *Commonwealth v. Eiland,* 450 Pa. 566, 301 A.2d 651 (1973); *Commonwealth v. Riggins,* 451 Pa. 519, 304 A.2d 473 (1973).

A review of the testimony in this case rejects the suppression court's finding that the custodial interrogation ran afoul of constitutional restraints.

Nathan Alston was arrested without a warrant in his home and in the presence of his parents at 8:00 A.M. on November 21, 1971. At that time he was informed, as were his parents, that he was being taken into custody for questioning involving the murder of Byron Harden the previous evening. He was immediately thereafter taken to the Homicide Unit at the Police Administration Building, arriving there at 8:35 A.M. The first interrogation session commenced at 8:50 A.M. at which time appellant was given his *Miranda* warnings and was informed of the nature of the crime being

investigated. The session ended at 9:50 A.M. No statement was elicited except a denial by Alston of his involvement in the entire criminal episode under investigation. The appellant was then asked to take a polygraph examination, to which he acquiesed. Between 9:55 A.M. and 11:05 A.M. the polygraph procedures were conducted. When the test was completed the investigating detective resumed his interview with the appellant which continued until 12:55 P.M. This session was stopped when the detective was informed that appellant's mother was on the telephone and wished to speak with her son.[3] The appellant until this time had continued to deny any involvement in the homicide. After speaking with his mother for approximately fifteen minutes the questioning resumed. He was questioned from 1:10 P.M. to 1:20 P.M.; at which time Alston asked to be allowed to use the men's room and permission was granted. At 1:28 P.M. he was returned to the room where a meal which had been ordered for him was waiting. At 1:50 P.M. another interrogation session was commenced which terminated at 3:40 P.M., during the course of which the appellant gradually implicated himself, first being present at the scene of the crime, then as the driver of the automobile implicating Benjamin Smith, a co-defendant, as the individual who actually did the shooting, and then finally admitting that he in fact shot the deceased. At this point he was joined by his mother. When asked by her, "What has happened, what did you do?", the appellant responded, "I shot that boy." Appellant then talked to his mother and uncle from 3:50 P.M. to 5:00 P.M. This was then followed by further police ques-

---

[3] The appellant's mother had previously been at the Homicide Unit but had left there telling a detective she would be in communication with them. When she called she advised a detective that she found a shotgun, later identified as the murder weapon.

tioning from 5:20 P.M. to 6:42 P.M. wherein the appellant gave a formal written statement in the presence of his mother and uncle.

The statement together with evidence adduced at trial, established that the appellant was a member of the Logan gang. On the evening of November 20, 1971, a gang from Nicetown encroached upon an area considered to be the exclusive territory of the Logan group. Appellant and two other youths entered a stolen car, located the Nicetown group and decided to "shoot at them and scare them." Appellant procured a shotgun, relocated the rival group and fired a shot. Two of the young men were struck by the shotgun pellets, Kirkland fortunately recovered but Harden was not so fortunate.

While there is of course no single litmus-paper test for determining constitutionally impermissible interrogation, we have long recognized that the ultimate test for voluntariness is whether the confession is the product of an essentially free and unconstrained choice by its maker. "If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process. Rogers v. Richmond, 365 U.S. 534. The line of distinction is that at which governing self-direction is lost and compulsion, of whatever nature or however infused, propels or helps to propel the confession." *Culombe v. Connecticut, supra* at **602** (1961); see also, *Commonwealth ex rel. Butler v. Rundle, supra* at 149, 239 A.2d at 430 (1968); *Commonwealth v. Eiland, supra* at 574, 301 A.2d at 654 (1973); *Commonwealth v. Riggins, supra* at 524, 304 A.2d at 476 (1973); *Commonwealth v. Banks,* 454 Pa. 401, 407, 311 A.2d 576, 579 (1973). An evaluation seeking to determine whether a confession is involuntary because of psycho-

logical coercion must consider those elements imping-
ing upon a defendant's will such as: the duration, and
the methods of interrogation; the conditions of de-
tention, the manifest attitude of the police toward the
defendant, the defendant's physical and psychological
state and all other conditions present which may serve
to drain ones powers of resistance to suggestion and
undermine his self-determination. See *Culombe v.
Connecticut, supra* at 602; *Commonwealth ex rel. But-
ler v. Rundle, supra* at 151, 239 A.2d at 431; *Common-
wealth v. Eiland, supra* at 574, 301 A.2d at 654; *Com-
monwealth v. Riggins, supra* at 525, 304 A.2d at 476;
*Commonwealth v. Banks, supra* at 407, 311 A.2d at 579.
As we have noted, when the question of voluntariness
passes beyond the realm of physical coercion and into
degrees of psychological coercion, most careful atten-
tion will be afforded to any facts, circumstances or
events tending to overbear the will of the accused.
*Commonwealth ex rel. Butler v. Rundle, supra* at 149,
239 A.2d at 430.

Applying these considerations to the facts before
us, we cannot agree with the suppression court's find-
ing that the will of the appellant had been overborne.
The periods of interrogation were limited in duration
and separated by appropriate times for rest, food and
use of toilet facilities. Appellant was afforded ample
opportunity to confer with his relatives and to discuss
his plight with them at crucial steps during the inter-
rogation. Most significant is the fact that prior to
the first inculpatory statement the appellant was al-
lowed an opportunity to speak at length with his
mother. Equally as important is that before the ad-
missions were reduced to writing and signed by the
appellant, he was again afforded an opportunity to
speak to his mother and uncle for a period of one and
a half hours.

The testimony reflects that although the appellant was seventeen years of age, he was of normal intelligence, a student in the eleventh grade of a public high school in the Philadelphia school system, that he was not under the influence of drugs or alcohol, that he had slept at least six hours the night preceding his arrest and that there was a complete absence of any evidence that would suggest that the manner of the interrogation was in any way threatening or coercive.

In *Commonwealth v. Frisby,* 451 Pa. 16, 20, 301 A.2d 610, 611-12 (1973), we held a confession to be voluntarily and intelligently made, where the statement was elicited from the defendant after an interrogation of several hours in the presence of the defendant's mother, and subsequently signed by both. Also, in *Commonwealth v. Banks, supra* at 407, 311 A.2d at 579, we held on a similar factual situation a defendant's confession to be free and voluntary where the actual interrogation spanned less than four hours; was unaccompanied by physical violence; the defendant was nineteen years of age and had an eleventh grade education; was mentally alert and coherent at the time of questioning; and the interrogator did not employ any trick designed to produce a false story.

Appellant also attacks the sufficiency of the Miranda warnings given prior to his interrogation. His specific objection is directed at the failure of police officials to expressly inform him that questioning would cease if he elected to remain silent. Although it is unquestionably true that interrogation must cease upon such election, *Miranda v. Arizona,* 384 U.S. 436, 473-75 (1966); *Commonwealth v. Youngblood,* 453 Pa. 225, 232, 307 A.2d 923, 926 (1973); *Commonwealth v. DuVal,* 453 Pa. 205, 220, 307 A.2d 229, 236 (1973), nowhere among the express requirement set forth in *Miranda* or the cases of this Commonwealth is it mandated that the suggested instruction be given.

Judgment of sentence imposed on the bill of indictment charging murder is affirmed.

Judgment of sentence imposed on the bill of indictment charging assault and battery is vacated and remanded for resentencing.